**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FERRING B.V., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-5909 |
| | : | |
| MYLAN PHARMACEUTICALS INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                          **AUGUST 21, 2014**

Presently pending before the Court is Defendant Mylan Pharmaceuticals Inc.'s ("Mylan Pharma") Motion to Transfer this Action to the U.S. District Court for the Northern District of West Virginia Pursuant to 28 U.S.C. § 1404 (a), and Plaintiff Ferring B.V.'s ("Ferring") Opposition to Mylan Pharmaceuticals Inc.'s Motion to Transfer.  For the reasons set forth below, Mylan Pharma's Motion is denied.

**I.      BACKGROUND**

This is an action for infringement of U.S. Patent No. 7,947,739, U.S. Patent No. 8,022,106, U.S. Patent No. 8,273,795 and U.S. Patent No. 8,487,005 (collectively, "the patents-in-suit").  Compl. ¶ 5.  The patents-in-suit disclose and claim, inter alia, tranexamic acid formulations and methods of treating menorrhagia using such formulations.  Id. ¶¶ 11-14.  The claims of the patents-in-suit include one embodiment named Ferring's Lysteda®, a 650 mg tranexamic acid tablet formulation approved by the U.S. Food and Drug Administration ("FDA") for the treatment of heavy menstrual bleeding.  Id. ¶¶ 15-16.  This infringement action arose from

the filing of Abbreviated New Drug Application ("ANDA") No. 20-5133 by Mylan Pharma, Mylan Inc. and Mylan Institutional seeking FDA approval to market generic versions of Lysteda® before expirations of the patents-in-suit.[1]  Id. ¶¶ 17-27.

On October 7, 2013, Ferring filed this action against Mylan Pharma, Mylan Inc. and Mylan Institutional.[2]  Counterclaims alleging non-infringement and invalidity have been filed against Ferring.  On May 27, 2014, Mylan Inc. and Mylan Institutional were dismissed without prejudice from the case pursuant to a stipulation of the parties.  (See Stip. & Order Dismissing Without Prejudice Defendants Mylan Inc and Mylan Institutional ("Stipulation").)  The Stipulation states that all three entities will be bound by any judgment and agree to provide discovery.[3]  (Id. ¶¶ 1, 3.)  On July 17, 2014, Mylan Pharma filed its Motion to Transfer the Action to the U.S. District Court for the Northern District of West Virginia Pursuant to 28 U.S.C. § 1404(a).  On August 4, 2014, Ferring filed its response in opposition.

---

[1] The filing of this Hatch-Waxman ANDA lawsuit triggered a 30-month stay, during which time the FDA is precluded from issuing a final approval of Mylan Pharma's ANDA.  (Ferring's Opp'n Mylan's Mot. to Transfer at 2 n.1) (citing 21 U.S.C. § 355(c)(3)(C)).  "To protect the patent holders from potentially infringing generics who are seeking approval, the Hatch-Waxman Act provided a means by which the patent holder could sue to prevent the marketing of the generic drug prior to its distribution." Paddock Labs., Inc. v. Ethypharm S.A., No. 09-3779, 2011 WL 149860, at *2 (D.N.J. Jan. 18, 2011); see also 21 U.S.C. § 355.

[2] Subject matter jurisdiction is based upon 28 U.S.C. §§ 1331, 1338(a).  Compl. ¶ 6.  Ferring is a Dutch corporation with its headquarters in Hoofddorp, The Netherlands.  Id. ¶ 1.  Mylan Pharma is a West Virginia corporation with its principal place of business in Morgantown, West Virginia.  Id. ¶ 3.  Mylan Inc., the parent corporation, is a Pennsylvania corporation with its principal place of business located in Canonsburg, Pennsylvania.  Id. ¶ 2.  Mylan Institutional is a West Virginia corporation with its principal place of business in Morgantown, West Virginia.  Id. ¶ 4.

[3] The Stipulation states, in relevant part, that "[t]he terms of this stipulation also cannot be used by Plaintiff or Defendants to argue for or against jurisdiction in the future."  (See Stip. & Order Dismissing Without Prejudice Defendants Mylan Inc and Mylan Institutional ¶ 5.)  Relying upon this statement, Ferring argues that Mylan Pharma is precluded from arguing for a transfer of venue.  (Ferring's Mem. Law Opp'n Mot. to Transfer Venue at 7.)  Since jurisdiction is not at issue, we find that the Stipulation does not preclude Mylan Pharma from raising its Motion to Transfer pursuant to 28 U.S.C. § 1404(a).

II.    **LEGAL STANDARDS**

Transfers under § 1404(a) are at the discretion of the district court and should be

adjudged on an individualized, case-by-case basis with an eye toward convenience and fairness.[4]

See Stewart Org., Inc., v. Ricoh Corp., 487 U.S. 22, 29 (1988).  In making this determination,

courts must "'consider all relevant factors to determine whether the litigation would more

conveniently proceed and the interests of justice be better served by transfer to a different

forum.'"  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Charles

Wright, Arthur Miller and Edward Cooper, Federal Practice and Procedure: Jurisdiction and

Related Matters § 3847 (2d ed. 1986)).  The United States Court of Appeals for the Third Circuit

("Third Circuit") in Jumara identified these considerations as falling within the spheres of private

and public interests.  Jumara, 55 F.3d at 879.  Private interests include: the plaintiff's forum

preference as manifested in the pleadings; the defendant's preference; whether the claim arose

elsewhere; the convenience of the parties as indicated by their relative physical and financial

condition; the convenience of the witnesses (only if they are unavailable for trial in another fora);

and the location of books and records.  Id. (citing 15 Wright, Miller & Cooper §§ 3848, 3849,

3851, 3853).  Moreover, public interests include: the enforceability of the judgment; practical

considerations that could make the trial easy, expeditious, or inexpensive; the relative

administrative difficulty in the two fora resulting from court congestion; the local interest in

deciding local controversies at home; the public policies of the fora; and the familiarity of the

---

[4]"Many courts have noted that the only relevant distinction between the venue-transfer statutes is simply which of the two principal transfer statutes - §§ 1404(a) and 1406(a) - is appropriate for transfers: the former is appropriate when venue is proper and the latter should be used when venue is improper."  Lafferty v. St. Riel, 495 F.3d 72, 78 (3d Cir. 2007).  Since venue is proper here, the focus of this Memorandum Opinion is on the appropriateness of transfer of venue to the Northern District of West Virginia pursuant to § 1404(a).

trial judge with the applicable state law.  Id. (citing 15 Wright, Miller & Cooper § 3854).

The burden rests with the movant to show that transfer is appropriate.  Jumara, 55 F.3d at 879 (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)).  That is, the burden is on the moving party to show that "all relevant things considered, the case would be better off transferred to another district."  In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (citation omitted).  "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed."  Shutte, 431 F.2d at 25 (citation omitted).  Accordingly, "unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail."  Id.  A defendant must show that the balance of the public and private factors "tips decidedly in favor of trial in the foreign forum" and if "when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied."  Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991).  After balancing the private and public interests set forth in Jumara to ascertain whether transfer is warranted, we conclude that transfer is not appropriate in this case under Section 1404(a).

## III.   DISCUSSION

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The parties do not dispute that this action "might have been brought" in the Northern District of West Virginia.  See id.; see also 28 U.S.C. §§ 1391(b) and 1400(b).  The question before the Court, therefore, is whether Mylan

4

Pharma has shown that "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to [that] forum." Jumara, 55 F.3d at 879.

A.    **Private Factors**

As previously explained, the private interests include: the plaintiff's forum preference; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses (only if they are unavailable for trial in another fora); and the location of books and records. Jumara, 55 F.3d at 879 (citation omitted).  We find that the private factors do not weigh strongly in favor of transfer.

1.    *Plaintiff's Choice of Forum*

A plaintiff's choice of forum is accorded "paramount consideration," and should not be "lightly disturbed."  See Jumara, 55 F.3d at 879; Shutte, 431 F.2d at 25.  The United States Court of Appeals for the Federal Circuit has stated that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference."  In re Link–A–Media Devices Corp., 662 F.3d 1221, 1223 (Fed. Cir. 2011).  Ferring filed suit in the Eastern District of Pennsylvania, which weighs against the transfer of venue.  Mylan Pharma points out that Ferring is a Dutch corporation; therefore, the Eastern District of Pennsylvania is not its home forum.  (Mylan's Mem. Law Support Mot. to Transfer at 8-9.)  Since this district is not Ferring's home forum, less significance is accorded this preference.  Even according less significance, Ferring's choice of forum weighs against transfer.

2.    *Defendant's Choice of Forum*

Regarding Mylan Pharma's forum preference, it is noted that "[d]efendant's preference is

entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) (citing Superior Precast, Inc. v. Safeco Ins. Co. of Am., 71 F. Supp. 2d 438, 446 (E.D. Pa. 1999)).  Nevertheless, Mylan Pharma's forum preference, which is its home forum, weighs in favor of transfer.[5]

### 3.      Where the Claim Arose

The next factor to consider is whether the claim arose elsewhere.  "In patent infringement cases, the 'preferred forum is that which is the center of gravity of the accused activity.'" Saint–Gobain Calmar Inc. v. Nat'l Prods. Corp., 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (quoting Renzetti Inc. v. D.H. Thompson, Inc., No. 96-8520, 1997 WL 230806, at *3 (E.D. Pa. May 2, 1997)).  "The 'center of gravity' for such a claim is in the district court where the alleged infringement occurred.  In finding that 'center of gravity,' a district court 'ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" Id. at 660 (quoting Renzetti, 1997 WL 230806 at *3; S.C. Johnson & Son, Inc. v. Gillette Co., 571 F. Supp. 1185, 1188 (N.D. Ill. 1983)).  "'Appropriate considerations include the location of a products development, testing, research and production [and] the place where marketing and sales decisions were made, rather than where limited sales activity has occurred.'" Id. (quoting Ricoh Co. Ltd. v. Honeywell Inc., 817 F. Supp. 473, 482 n.17 (D.N.J. 1993)).

Pennsylvania is not the center of gravity for this case.  Mylan Pharma argues that "no operative facts relating to the preparation or filing of Mylan Pharmaceuticals' tranexamic acid

---

[5] Ferring points out that Mylan Pharma affirmatively chose to litigate in this forum in Mylan Pharms. Inc. v. Warner Chilott Public Ltd. Co., No. 12-3824 (E.D. Pa. 2012)  Additionally, Ferring asserts that Mylan Pharma chose this forum in asserting its counterclaims against Ferring.  (Ferring's Opp'n Mylan's Mot. to Transfer at 8.)

tablets ANDA occurred in Pennsylvania."  (Mylan's Mem. Law Support Mot. to Transfer at 7.)

Mylan Pharma goes on to state that "the research and development of Mylan Pharmaceuticals'

generic tranexamic acid product, the preparation of the ANDA, and the filing of the ANDA all

occurred exclusively in West Virginia."  (Id.) (citing Decl. of Joseph Sobecki, Mylan Pharma's

V.P. Regulatory Affairs ("Sobecki Decl.") ¶¶ 5-7, 9.)  Ferring argues that key events related to

the preparation of its ANDA occurred outside of West Virginia.  (Ferring's Opp'n Mylan's Mot.

to Transfer at 12.)  Ferring states that all of the bioequivalence testing was conducted in India,

and Mylan Pharma has admitted that it conducts testing relating to one of the excipients in its

infringing generic tranexamic acid formulation in Pennsylvania.[6]  (Id.) (citing Mylan's Mem.

Law Support Mot. to Transfer at 4 n.1.)  Upon consideration of the arguments, it is clear that

Mylan Pharma has shown that the center of gravity is more accurately described as West Virginia

than Pennsylvania.  Consequently, this factor weighs in favor of transfer.

### 4.     The Convenience of the Parties

The convenience of the parties "as indicated by their relative physical and financial

condition" should also be a factor that is considered in determining whether transfer is

appropriate.  Jumara, 55 F.3d at 879 (citations omitted).  The parties have not proffered any

arguments regarding their financial ability to litigate in either forum.  Since the parties are major

pharmaceutical corporations it is safe to presume that they have the financial ability to litigate in

either forum.

Regarding the relative physical location, neither party are residents of Pennsylvania.

---

[6]Ferring states that "Mylan Pharma attempts to discount this admission by contending that this excipient is
not relevant to the claims or defenses in this case, but it fails to explain why it is allegedly irrelevant."  (Ferring's
Opp'n Mylan's Mot. to Transfer at 12.)

Pennsylvania does not appear to be particularly convenient for anyone involved since everyone would have to travel here for litigation. Mylan Pharma asserts that West Virginia is a more convenient location because it is based there and the employees who developed the tranexamic acid tablets product and prepared the ANDA are all located in or around Morgantown, West Virginia. (Mylan's Mem. Law Support Mot. to Transfer at 7.) Mylan Pharma also argues that litigating in either location would be the same for Ferring since it is based in neither location. (Id.) Ferring counters Mylan Pharma's assertion by arguing that Pennsylvania is a substantially more convenient forum for it because its U.S. facilities are located in Parsippany, New Jersey. (Ferring's Opp'n Mylan's Mot. to Transfer at 11.) Ferring also argues that the present forum is a logical and convenient choice because the corporate headquarters of Mylan Pharma, Mylan Inc., and Mylan Institutional is in Pennsylvania.[7] (Id.) Ferring further asserts that "Mylan Pharma's agreement in the parties' stipulation to provide all discovery from both Mylan Inc., located in Pennsylvania, and Mylan Institutional, located in West Virginia, bely its present arguments that it is somehow inconvenient for it to litigate the present action in this jurisdiction." (Id.) (citing Stip. & Order Dismissing Without Prejudice Defendants Mylan Inc and Mylan Institutional ¶¶ 2-3.) Additionally, Ferring points out that "the fact that the Eastern District of Pennsylvania, unlike the Northern District of West Virginia, contains a major international airport makes this forum much more convenient for an international company such as Ferring." (Id.) Upon consideration of the various arguments, we conclude that this factor is non-determinative as

---

[7]Ferring notes that Mylan Pharma has successfully moved to transfer a case from West Virginia to Pennsylvania pursuant to 28 U.S.C. § 1404(a) in Sanner v. Mylan Pharms., Inc., No 10-166, 2010 WL 3294370, at *1 (S.D. W. Va. Aug. 19, 2010) (transferring case from Southern District of West Virginia to the Western District of Pennsylvania). (Ferring's Opp'n Mylan's Mot. to Transfer at 13.)

neither favors keeping this case in the Eastern District of Pennsylvania nor transferring the case to West Virginia.

### 5.  *The Convenience of the Witnesses*

The convenience of the witnesses is a neutral factor.  In Jumara, the Third Circuit stated that it is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses "actually may be unavailable for trial in one of the fora" that is a determinative factor in the transfer analysis.  Jumara, 55 F.3d at 879.  Setting aside the general argument that witnesses may be inconvenienced by litigating in Pennsylvania, Mylan Pharma does not assert that any witnesses would be unavailable to appear in the present forum.  In fact, it has not identified a single witness who would be available in the Northern District of West Virginia, but is unavailable in the Eastern District of Pennsylvania.  It appears that many of the witnesses identified as having potentially relevant testimony are either party witnesses or witnesses employed or retained by one of the parties.  See Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1332 (Fed. Cir. 2011) ("The district court also pointed out that the convenience of the witnesses did not favor either forum, because most of the witnesses were employees of or consultants to the parties and could therefore be encouraged to testify in either forum, even if they could not be compelled to testify in Delaware. This was correct.")

Mylan Pharma does assert that "according to the face of the patents-in-suit, none of the inventors (who are likely to be called at trial) appear to reside in this district."  (Mylan's Mem. Law Support Mot. to Transfer at 8.) (citing Decl. of Meghan M. Rachford, Esq., McGuire Woods LLP ("Rachford Decl.") ¶¶ 7-10; Rachford Decl. Exs. D-G.))  Notably, Mylan Pharma does not contend that any of the inventors would be available in West Virginia.  Likewise, it does not

contend that any of the inventors would be unavailable, either live or via recorded deposition testimony, for trial in this district.  Review of the Rachford Declaration reveals that none of the inventors reside in either this district or the Northern District of West Virginia.  (See Rachford Decl. ¶¶ 7-10; Rachford Decl. Exs. D-G.)  Instead, they apparently reside in Ohio, Missouri, Kentucky, Georgia, and Minnesota.  (Id.)  Significantly, none of the parties have presented a material non-party witness that is either within this Court's subpoena power or the proposed transferee court's subpoena power.[8]  "The risk of a case going to trial and having crucial witnesses outside of the court's subpoena power who refuse to testify is one faced by all parties to a case."  Zazzali v. Swenson, 852 F. Supp. 2d 438, 451 (D. Del. 2012) (citing Intellectual Ventures I LLC v. CheckPoint Software Techs. Ltd., 797 F. Supp. 2d 472, 484 (D. Del. 2011)). As such, this factor is neutral.

### 6.    Location of Books And Records

Neither party contends that they would be unable to produce, or would have difficulty producing, the records in either forum.  Consequently, this factor is neutral.

### B.    Public Interests

Many of the public interest factors are inapplicable.  Since this lawsuit arises under federal law, the public interest factors such as the enforceability of the judgment, public policies,

---

[8]Mylan Pharma heavily relies upon the argument that "all Mylan Pharmaceuticals employees are based in or around the Northern District of West Virginia."  (Mylan's Mem. Law Support Mot. to Transfer at 8.) (citing Sobecki Decl. ¶ 9.)  Ferring points out that "public information indicates that at least one of these Mylan Pharma employees, Mr. Kirsch, does not even reside in West Virginia and in fact resides in Pennsylvania . . . thus calling into question the broad assertions in Mr. Sobecki's declaration that all Mylan Pharma witnesses are within the Northern District of West Virginia."  (Ferring's Opp'n Mylan's Mot. to Transfer at 10; Ex. 3 at 2; Ex. 4.)  Ferring also attacks Mylan Pharma's arguments, as well Sobecki's Declaration, by relying upon Mylan Pharma's statements in Takeda Pharm. Co. v. Mylan Inc. and Mylan Pharms., No. 12-0024 (S.D.N.Y. 2012).  (Id.)  Ferring states that "[i]n that case, Mylan stated that 'Mylan Inc. and Mylan Pharmaceuticals Inc. employ over 17,000 people.  Many of the employees within Mylan's domestic workforce reside in or near the Western District of Pennsylvania and work primarily in Canonsburg, Pennsylvania or Morgantown, West Virginia.'"  (Id.; Ex. 8 at 2.)

and the familiarity of the trial judge with the applicable law are neutral.  Mylan Pharma asserts

that the only relevant public interest factor has to do with court congestion.  It argues that this

district is far more congested than the Northern District of West Virginia because 12,963 cases

were pending in this district whereas the Northern District of West Virginia had 603 cases, or 4%

of this district, pending for the year ending March 31, 2013.  (Mylan's Mem. Law Support Mot.

to Transfer at 8-9.) (citing Rachford Decl. ¶ 11; Rachford Decl. Ex. H.)  As Ferring points out,

Mylan Pharma's argument fails because it does not account for the relative size and resources of

the two courts.  (Ferring's Opp'n Mylan's Mot. to Transfer at 14.)  Ferring states that this district

has 17 district court judges and 18 senior judges totaling 35 judges.  (Id.) (citing Ex. 10.)  In

contrast, the Northern District of West Virginia has four district court judges and one senior

judge for a total of five judges.  (Id.) (Ex. 11.)  Thus, Ferring argues that it is not surprising that

this district has a much higher caseload.[9]  (Id.)  In light of the aforementioned, Mylan Pharma has

failed to meet its burden of showing greater congestion in this district.

Ferring urges that certain practical considerations weigh in favor of keeping the litigation

in this forum.  According to Ferring, administrative and practical considerations make the trial

easier, quicker or less expensive in favor of keeping this litigation here.  Ferring states this case

has already proceeded for several months, and the parties and the Court have engaged in initial

discovery, set a schedule and negotiated a Protective Order.  (Id. at 15.)  Ferring argues that

maintaining this case in this forum would ensure a quicker and less expensive resolution because,

---

[9]As a practical consideration, Ferring notes that this district has had a significantly greater number of patent cases than the Northern District of West Virginia.  Ferring asserts that, in the last five years, 191 patent cases were filed in this district compared to 28 patent cases in the Northern District of West Virginia.  (Ferring's Opp'n Mylan's Mot. to Transfer at 15.) (Ex. 12.)  Ferring argues that this district court's experience with patent suits will facilitate resolving this case in a timely and cost-effective manner.  (Id. at 15-16.)

if the case was transferred, the parties would need to engage new counsel and a new judge would

need to become familiar with this action.  (Id.)  As such, Ferring argues that this would delay

resolution of the case and could potentially jeopardize its chances of obtaining resolution prior to

the 30-month stay.  (Id.)  Also, Ferring states that it would have to incur the costs associated with

locating new local counsel and educating them on what has transpired over the past ten months.

(Id.)

 Upon consideration of the parties' respective arguments, we conclude that the "practical

considerations" of the public interest factors weigh against transfer.

## IV. <u>CONCLUSION</u>

 Mylan Pharma has not shown that the balance of the <u>Jumara</u> private and public interest

factors weighs strongly in favor of transfer.  <u>See</u> <u>Shutte</u>, 431 F.2d at 25 (stating that "unless the

balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of

forum should prevail.")  Consequently, Mylan Pharma's Motion to Transfer to the Northern

District of West Virginia pursuant to 28 U.S.C. § 1404(a) is denied.

 An appropriate Order follows.